**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| LONGI GREEN ENERGY TECHNOLOGY CO. LTD., <br><br> Plaintiff, <br><br> vs. <br><br> JINKO SOLAR CO., LTD., JINKOSOLAR HOLDING CO., LTD., JINKOSOLAR (VIETNAM) INDUSTRIES CO. LTD., and JINKO SOLAR TECHNOLOGY SDN. BHD., <br><br> Defendants. | Civil Action No. 2:25-cv-00048 <br><br><br> JURY TRIAL DEMANDED |

<u>**PLAINTIFF LONGI GREEN ENERGY TECHNOLOGY CO. LTD.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**</u>

# **TABLE OF CONTENTS**

**Page**

RESPONSE TO STATEMENT OF THE ISSUES TO BE DECIDED ............................................1

I.    INTRODUCTION.............................................................................................................2

II.   FACTUAL BACKGROUND............................................................................................3

III.  LEGAL STANDARD .......................................................................................................7

IV.   ARGUMENT.....................................................................................................................9

     A.    The Federal Rules of Civil Procedure Authorize Service Under California Law ......................................................................................................................9

     B.    LONGi Properly Served Defendants Via Their General Manager Jinko US .......12

          1.    It Is Reasonably Certain Jinko US Would Apprise Defendants of Service.............................................................................................15

          2.    Jinko US Gives Defendants Substantially the Business Advantage They Would Have Enjoyed if They Conducted Business Through Their Own Offices or Agents in California ..............................................17

     C.    The Court Need Not Address Whether Jinko US Is an "Alter Ego" of Defendants .........................................................................................................18

V.    CONCLUSION ...............................................................................................................21

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG,*
    697 F. Supp. 3d 635 (E.D. Tex. 2023) ........................................................... *passim*

*Arigna Tech. Ltd. v. Bayerische Motoren Werke AG,*
    No. 2:21-cv-00172 (E.D. Tex. Jan. 20, 2022) ................................................. *passim*

*Atlas Global Techs. LLC v. TP-Link Techs. Co.,*
    No. 2:21-cv-430-JRG-RSP, 2022 WL 18584501 (E.D. Tex. Dec. 28, 2022) ................ *passim*

*Brewer v. Suzuki Motor of Am., Inc.,*
    No. 15-cv-197, 2015 WL 4433046 (S.D. Tex. July 17, 2015) ................................19

*Brighton Collectibles, Inc. v. Winston Brands, Inc.,*
    No. 11-cv-02191-GPC, 2013 WL 394060 (S.D. Cal. Jan. 30, 2013) ......................12

*Carimi v. Royal Caribbean Cruise Line, Inc.,*
    959 F.2d 1344 (5th Cir. 1992) ...............................................................7

*Cosper v. Smith & Wesson Arms Co.,*
    53 Cal. 2d 77 (1959) ........................................................................ *passim*

*Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.,*
    No. 17-cv-01827, 2018 WL 3330022 (N.D. Tex. Mar. 16, 2018) ....................10, 19

*Gibble v. Car-Lene Rsch., Inc.,*
    67 Cal. App. 4th 295, 313 (1998) ............................................................9

*Hargrave v. Fibreboard Corp.,*
    710 F.2d 1154 (5th Cir. 1983) .............................................................18

*Hatami v. Kia Motors Am., Inc.,*
    No. 08-cv-226, 2008 WL 4748233 (C.D. Cal. Oct. 29, 2008) ...............................9

*K-fee System GmbH v. Nespresso USA, Inc.,*
    No. 22-cv-525-GW-AGRx, 2022 WL 18278402 (C.D. Cal. July 13, 2022) ...................14, 20

*Laukat v. ABB, Inc.,*
    No. 19-cv-09436-CJC(Ex), 2020 WL 3213759 (C.D. Cal. Feb. 20, 2020) ......................12, 14

*Rothschild Connected Devices Innovations LLC v. ADS Sec., L.P.,*
    No. 2:15-cv-01431-JRG-RSP, 2019 U.S. Dist. LEXIS 158361
    (E.D. Tex. Aug. 13, 2019) .....................................................................8

*Wilco Marsh Buggies & Draglines, Inc. v. EIK Eng'g Sdn. Bhd.*,
    No. 19-cv-00565, 2020 WL 6154189 (W.D. Tex. Feb. 26, 2020) .........................................19

*Yamaha Motor Co. v. Superior Court*,
    174 Cal. App. 4th 264 (2009) ...........................................................................................14, 17

**Statutes**

Cal. Civ. Proc. Code § 416.10(b)..............................................................................................2, 8

Cal. Corp. Code § 2110..............................................................................................................2, 8

**Rules**

Fed. R. Civ. P. 4(h) .............................................................................................. *passim*

Fed. R. Civ. P. 4(e)(1).......................................................................................... *passim*

Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment.................................................8

Fed. R. Civ. P. 12(b)(5)............................................................................................................1, 7

## RESPONSE TO STATEMENT OF THE ISSUES TO BE DECIDED

The Court should deny Defendants Jinko Solar Co., Ltd., JinkoSolar Holding Co., Ltd., Jinko Solar Technology Sdn. Bhd., and Jinko Solar (Vietnam) Industries Co. Ltd. (collectively, "Defendants") Rule 12(b)(5) motion to dismiss because Plaintiff properly served the original Complaint on Defendants in compliance with Rules 4(e)(1) and 4(h) by serving Defendants' "general manager," JinkoSolar (U.S.) Inc., in California pursuant to California law, an approach which this Court has upheld in *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-00172, Dkt. 168 (E.D. Tex. Jan. 20, 2022) and *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635 (E.D. Tex. 2023).

Plaintiff LONGi Green Energy Technology Co. Ltd. ("LONGi") respectfully submits this Opposition to Defendants' Motion to Dismiss for Insufficient Service of Process. Dkt. 17 ("Motion" or "Mot.").

## I.        INTRODUCTION

Defendants were properly served under the Federal Rules of Civil Procedure and the laws of the state where service was made: California. Under Rules 4(h) and 4(e)(1), service of process on a foreign corporation is proper if performed "following state law for serving a summons in an action brought in courts of general jurisdiction in the state . . . *where service is made*." Fed. R. Civ. P. 4(h), (e)(1) (emphasis added). Here, service was made *in California* on Defendants' affiliate JinkoSolar (U.S.) Inc. ("Jinko US") through that entity's authorized agent. California law authorizes service of process on a corporation by delivering a copy of the summons and the complaint to a "general manager" of the corporation in the state. Cal. Corp. Code § 2110; Cal. Civ. Proc. Code § 416.10(b). This term's broad definition, applied by the California Supreme Court and other courts (including this Court) in dozens of subsequent cases, sets an exceedingly low bar that encompasses sales representatives, local distributors, and domestic affiliates of foreign corporations. It is easily met here, where Defendants acknowledge a persistent and mutually beneficial business relationship with their U.S. agent Jinko US, which entails, among other things, regular communication, regular business transactions such as selling, importing, and providing customer support for Defendants' products, and shared board members and executives.

This Court applied the "general manager" standard to nearly identical facts in *Arigna II*[1]

---

[1] Order, *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, No. 2:21-cv-00172, Dkt. 168, at 4 (E.D. Tex. Jan. 20, 2022) ("*Arigna II*").

and *Arigna III*,[2] holding that service of process on a foreign entity was properly effectuated via service of process in California on the registered agent of a U.S. subsidiary. That domestic entity (like Jinko US) served as a point of contact for servicing U.S. customers, importing and selling the defendant's accused products, and making U.S.-focused business decisions, therefore functioning as the foreign defendant's "general manager" under California law.

Rather than address California law (or *Arigna II* and *III*, which Defendants fail to even cite), Defendants' Motion focuses on an entirely different question: whether Jinko US functions as Defendants' "alter ego." That question is irrelevant, because the plain language of the Federal Rules of Civil Procedure provide the option to serve the Defendants in California pursuant to either Texas *or* California law. When assessed under the proper standard governed by California law, and the well-pled (and now *admitted*) facts, Jinko US easily clears the low bar required to constitute a "general manager" of all Defendants, and service of process on Defendants was unquestionably proper. Defendants' Motion should be denied.

## II.    FACTUAL BACKGROUND

On January 17, 2025, LONGi filed its Complaint alleging infringement of U.S. Patent No. 9,515,214. Dkt. 1. The Complaint named as Defendants JinkoSolar Holding Co., Ltd. ("JinkoSolar"), Jinko Solar Co., Ltd. ("Jinko China"), Jinko Solar (Vietnam) Industries Co. Ltd. ("Jinko Vietnam"), and Jinko Solar Technology Sdn. Bhd. ("Jinko Malaysia"). *Id.* ¶¶ 4–14. All Defendants are foreign entities incorporated in the Cayman Islands, China, Vietnam, and Malaysia, respectively, and with principal places of business outside the United States. *Id.* On January 23, 2025, summonses to each of these Defendants were issued "c/o JinkoSolar (U.S.)

---

[2] *Arigna Tech. Ltd. v. Bayerische Motoren Werke AG*, 697 F. Supp. 3d 635 (E.D. Tex. 2023) ("*Arigna III*").

Inc. c/o Annie Zhou" at 1901 S. Bascom Avenue, Suite 350 Campbell, CA 95008." Dkts. 6 to 6-3. Defendants do not dispute that each of these summonses were properly served at the above-noted address on the agent authorized by Jinko US to accept service. Dkts. 7–10; Dkt. 1, ¶ 17; Dkt. 22-1 (H. Li Decl.), ¶ 9 (confirming Ms. Zhou is Jinko US's registered agent in the State of California and was served by LONGi). On February 13, 2025, after service of the Complaint on Jinko US, Defendants (i.e., "Jinko Solar Co., Ltd., et al.") filed an unopposed application for an extension of time to answer the Complaint, thus confirming Defendants had all promptly received notice of the Complaint. Dkt. 13.

In the Complaint, LONGi pled facts confirming that Jinko US constitutes a "general manager" of each Defendant. For example, LONGi alleged that JinkoSolar distributes its infringing solar cell products, solutions, and services in China, the United States, and elsewhere abroad. Dkt. 1, ¶¶ 5–6. It does so through its 10 global production facilities, and 20 overseas subsidiaries, in Vietnam, the United States, and Malaysia, and its "global sales network with sales teams in China[] [and] the United States." *Id.* ¶ 5; Mot. at 13. Jinko US, Jinko Malaysia, Jinko Vietnam, and Jinko China are all direct or indirect subsidiaries of JinkoSolar and/or Jinko China (whose controlling shareholder is JinkoSolar). Dkt. 1, ¶¶ 8, 11, 14, 17.

Each of the Defendants, and Jinko US, are alleged to have a direct role with respect to the infringing solar cells imported into and sold in the United States. *Id.* ¶¶ 5–6, 10, 12–14, 17, 19–21. JinkoSolar and Jinko China share a principal place of business in China, which is referred to as JinkoSolar's "China Production Base Headquarters" on JinkoSolar's corporate website. *Id.* ¶ 8. Jinko China conducts all research and development for the infringing solar cells, including "import[ing] specially made solar cells into the United States for assembly into infringing solar modules in the United States" either directly or through its agents and intermediaries. *Id.* ¶ 10.

Jinko Vietnam is referred to as "Jinko Solar Vietnam Manufacture Base" on JinkoSolar's corporate website, and is alleged to make infringing solar modules for Jinko China that are ultimately imported and sold in the United States and bear the markings of Jinko China and/or JinkoSolar's corporate website. *Id.* ¶¶ 12–13.  Likewise, Jinko Malaysia is referred to on JinkoSolar's corporate website as "Jinko Solar Malaysia Manufacture Base," and is alleged to directly or through Jinko US import one or more of the infringing solar modules accused in the Complaint on behalf of Jinko China and/or JinkoSolar. *Id.* ¶ 14.  The accused solar cells have labels reflecting that they are supplied by Jinko China and manufactured by Jinko Malaysia and/or Jinko Vietnam. *Id.* ¶¶ 12–14.

Jinko US is alleged to have substantial and regular contacts with each of the Defendants, including acting as Defendants' U.S. sales agent with respect to the accused products.  For example, references provided in the Complaint show that Jinko US holds itself out to the public on its website as "a full-service team located in the heart of Silicon Valley" that is part of JinkoSolar's "worldwide logistics network" to satisfy the desire of JinkoSolar's "customers" for "local service." *Id.* ¶ 17.  Jinko US is also alleged to sell, offer to sell, and import "infringing solar modules, including those made by Jinko Malaysia[] [and] Jinko Vietnam . . . in and into the United States and Texas on behalf of JinkoSolar and Jinko China." *Id.* ¶ 19.  As the U.S. "seller and distributor of JinkoSolar and Jinko China's infringing solar module products," which are made by Jinko Vietnam and Jinko Malaysia, Jinko US is alleged to "provide[] JinkoSolar and Jinko China with substantial business advantages through Jinko US's business decisions, which JinkoSolar and Jinko China enjoy as if they conducted their business through their own offices or paid agents in California, where Jinko US has an office." *Id.*  It is further alleged that "Jinko US also has frequent contacts with Jinko Malaysia and Jinko Vietnam through at least the steady

importation of infringing solar modules," which likewise "provides Jinko Malaysia and Jinko Vietnam with substantial advantages through Jinko US's business decisions, which Jinko Malaysia and Jinko Vietnam enjoy as if they conducted their business through their own offices or paid agents in California, where Jinko US has an office." *Id.* ¶ 20. Based on their "close corporate relationship and common directors and officers," the Complaint also alleges, for example, that "it is reasonably certain that JinkoSolar and Jinko China have regular contacts with Jinko US in its capacity as their United States sales and operations base such that it is reasonably certain that JinkoSolar and Jinko China would be apprised of the service of this Complaint when it is served on Jinko US." *Id.* ¶ 18.

All of these well-pled facts must be accepted as true at the pleading stage. But, far from merely being assumed true, many of the pertinent facts are *admitted* by Defendants in their Motion and sworn declarations. For example, it is undisputed that all Defendants and Jinko US are direct or indirect subsidiaries of JinkoSolar. Dkt. 18-3 (X. Li Decl.), ¶¶ 7–11; Dkt. 18 (H. Cao Decl.), ¶¶ 8–11. It is also undisputed that each of the Defendants and Jinko US share common directors or officers, notably including Mr. Xiande Li, who is a board member of all entities, and the founder of JinkoSolar. Mot. at 4–5; Dkt. 1, ¶¶ 7, 9, 18.[3] According to Mr. Li, JinkoSolar "holds interest in entities that sell various PV products and components to [Jinko US], who [he] understand[s] serves a client base in the United States," which results in what he refers to as a "business partner[]" relationship. Dkt. 18-3 (X. Li Decl.), ¶¶ 13–14. It is also undisputed that Jinko US and each Defendant engage in "related business activities," which principally constitute Jinko US "serv[ing] a client base" for Defendants' products in the United States, such

---

[3] Mr. Xiande Li is also the CEO and/or President of Jinko US, Jinko China, and Jinko Vietnam. Dkt. 1, ¶ 18; Mot. at 4–5.

that Defendants are not required to "provide for or involve [themselves] in [Jinko US]'s daily business operations," do not maintain any offices or employees in the United States, and (except in limited circumstances) do not interface directly with U.S. customers. Dkt. 18-3 (X. Li Decl.), ¶¶ 13, 15, 17, 19, 22; Dkt. 18 (H. Cao Decl.), ¶¶ 5, 13, 15, 17, 19, 22; Dkt. 18-1 (L. Lim Decl.), ¶¶ 5, 11–14, 16, 18, 21; Dkt. 18-2 (Xinyou Decl.), ¶¶ 5, 11–14, 16, 18, 21. For its part, Jinko US has confirmed that it "holds certain business relationships with the Defendants," which includes "purchas[ing] various PV products and components" from Defendants, entering into legal agreements with Defendants, importing Defendants' products into the United States on Jinko US's customers' behalf, and generally interacting as "business partners" with Defendants. Dkt. 22-1 (H. Li Decl.), ¶¶ 10–12; Mot. at 6–8.

## III.    LEGAL STANDARD

In order to avoid dismissal for improper service under Federal Rule of Civil Procedure 12(b)(5), a plaintiff must make a "*prima facie* showing of proper service." *Arigna II*, at 3 (citing *Carimi v. Royal Caribbean Cruise Line, Inc.*, 959 F.2d 1344, 1346 (5th Cir. 1992)). Federal Rule of Civil Procedure 4(h) sets forth the requirements for service of process on a corporation (including foreign corporations), stating that (among other options) service "in a judicial district of the United States" is proper if done "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Federal Rule of Civil Procedure 4(e)(1), in turn, provides that "[u]nless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located *or where service is made*." *Id.* R. 4(e)(1) (emphasis added); *Arigna II*, at 4–7. For example, where service of a Complaint filed in the Eastern District of Texas is made on a corporation (including a

7

foreign corporation) in California, "the plain language of the Federal Rules of Civil Procedure permit service under the law of the place where service takes place—in this case California." *Arigna II*, at 6 (citing *Rothschild Connected Devices Innovations LLC v. ADS Sec., L.P.*, No. 2:15-CV-01431-JRG-RSP, 2019 U.S. Dist. LEXIS 158361, at *18–19 (E.D. Tex. Aug. 13, 2019)); Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment ("First, the revised rule authorizes the use of any means of service provided by the law not only of the forum state, *but also of the state in which a defendant is served* . . . .") (emphasis added).

"California law authorizes service of process on a corporation by delivering a copy of the summons and the complaint to 'a general manager' of the corporation" in the state. *Arigna II*, at 8 (citing Cal. Civ. Proc. Code § 416.10(b); Cal. Corp. Code § 2110). This extends to foreign corporations. *Atlas Global Techs. LLC v. TP-Link Techs. Co.*, No. 2:21-cv-430-JRG-RSP, 2022 WL 18584501, at *5 (E.D. Tex. Dec. 28, 2022) (citing Cal. Corp. Code § 2110.1), *report and recommendation adopted*, 2023 WL 1478451 (E.D. Tex. Feb. 2, 2023), *and mandamus denied*, 2023 WL 2881314 (Fed. Cir. Apr. 11, 2023). Under California Supreme Court precedent, a "general manager" for service of process is an agent (which may be a corporation or subsidiary of a corporation) who (1) is "of sufficient character and rank to make it reasonably certain that the defendant[(s)] will be apprised of the service" and (2) has "give[n] [the defendant(s)] substantially the business advantages that [they] would have enjoyed 'if [they] conducted [their] business through [their] own offices or paid agents in the state.'" *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83–84 (1959) (citation omitted). As this Court noted in *Arigna II*, the *Cosper* standard has been relied upon in California and federal courts in "more than a dozen cases since *Cosper* was decided in 1959." *Arigna II*, at 8 (compiling cases). A "general manager" has "'a very broad definition' which can 'include domestic sales representative(s) and

local distributor(s) of a foreign corporation.'"  *Id.* at 12 (quoting *Hatami v. Kia Motors Am., Inc.*, No. 08-cv-226, 2008 WL 4748233, at \*2 (C.D. Cal. Oct. 29, 2008)).  It is "well settled" that California statutes for service of process "should be liberally construed to effectuate service and uphold the jurisdiction of the court if actual notice has been received by the defendant."  *Atlas Global*, 2022 WL 18584501, at \*5 (quoting *Gibble v. Car-Lene Rsch., Inc.*, 67 Cal. App. 4th 295, 313 (1998)).

Because service on a defendant's "general manager" in California complies with California law and Federal Rule of Civil Procedure 4, it also provides due process.  *Arigna II*, at 11–14; *Arigna III*, 697 F. Supp. 3d at 645–46.

## IV.    ARGUMENT

Defendants' entire Motion rests on a fundamentally incorrect understanding of what constitutes proper service of process when, as here, a complaint is served on foreign entities through their "general manager" in California.  Rather than address that standard, which this Court in *Arigna II* and *III* acknowledged was appropriate under Rule 4(e)(1) and applicable under nearly identical circumstances, Defendants' Motion instead attacks "LONGi's reliance on an alter ego theory for service of process."  Mot. at 4.  This is a strawman.  LONGi does <u>not</u> rely on an "alter ego" theory of service, and the question of whether Jinko US is an "alter ego" of any of the Defendants is an irrelevant distraction that the Court need not address.  As discussed below, LONGi properly served each Defendant in California using a "general manager" procedure permitted by Federal Rule of Civil Procedure 4(h) and 4(e)(1) and deemed appropriate under California law and precedent for nearly three-quarters of a century.  No more is required.

### A.    The Federal Rules of Civil Procedure Authorize Service Under California Law

Service on foreign corporations is governed by Federal Rule of Civil Procedure 4(h).

Rule 4(h) contemplates two scenarios: service made (1) "in a judicial district of the United States" or (2) "at a place not within any judicial district of the United States," i.e., outside the United States.  Fed. R. Civ. P. 4(h)(1)–(2).  In the former case, the foreign corporation "must be served . . . in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual."  *Id.* R. 4(h)(1)(A).  "[T]he plain language of the Federal Rules of Civil Procedure [4(e)(1)] permit service under the law of the place where service takes place—in this case California."  *Arigna II*, at 6; *see also Atlas Global*, 2022 WL 18584501, at *5 ("Pursuant to federal law, a corporation can be served under the law of the state in which service was executed. . . .  Atlas served TP-Link USA's agent for service of process in California.  While the rules allow for application of Texas law, they do not preclude the application of California law.") (citation omitted); *Fundamental Innovation Sys. Int'l, LLC v. ZTE Corp.*, No. 17-cv-01827, 2018 WL 3330022, at *2 (N.D. Tex. Mar. 16, 2018) ("Rule 4(e)(1) in turn permits service pursuant to the law of the state where the district court is located *or the state where the corporation is served*.") (emphasis added).[4]

Here, all Defendants are foreign corporations.  Mot. at 4–5.  Service was made on their affiliate Jinko US at its California address and on the individual Jinko US had authorized to accept service of process.  *Id.* at 3; Dkts. 6 to 6-3.  Therefore, under Rules 4(h) and 4(e)(1), modes of service authorized by California law—including service on a foreign corporation's "general manager"—are applicable and appropriate.

This case is no different than the circumstances addressed by this Court in *Arigna II* and *Arigna III*.  In *Arigna II*, the plaintiff filed its patent infringement complaint in the Eastern

---

[4] Despite citing *Fundamental* extensively in its Motion (*e.g.*, Mot. at 3, 9, 18, 20), Defendants fail to address whether service of process was appropriate under California law as the law of "the state where the corporation [was] served."  *Fundamental*, 2018 WL 3330022, at *2.

District of Texas against BMW AG (a foreign corporation) and its U.S. subsidiary, BMW NA. *Arigna II*, at 2. Arigna served BMW NA in California by delivering documents to BMW NA's registered agent for service of process. *Id.* Service on BMW AG was made in California in the same manner, by delivery of documents to BMW NA's registered agent. *Id.* Thereafter, BMW AG and BMW NA (like Defendants here, Dkt. 13) applied for and received extensions of time to respond to the Complaint, and then filed a motion alleging improper service. *Arigna II*, at 2–3, 13–14. In its motion, BMW AG (like Defendants here, Mot. at 9) argued Texas law should apply to determine whether Arigna's method of service was proper because the forum court sat in Texas. *Arigna II*, at 4. The Court rejected BMW AG's argument, holding that "the Federal Rules permit service pursuant to California law" as the law of the state in which service was made, "that California authorizes service upon a general manager, and that Arigna properly served BMW AG via its general manager," BMW NA. *Id.* at 5–7.

*Arigna III* reached the same conclusion. In that case, Arigna served its amended complaint alleging patent infringement on BMW AG in California through BMW NA's registered agent. *Arigna III*, 697 F. Supp. 3d at 640. BMW NA (like Jinko US) was not a party to the lawsuit at the time the amended complaint was served. *Id.* at 643–44. The Court again found service was proper under California law, holding that "BMW NA can be a general manager for BMW [AG] regardless of whether BMW NA is joined to the suit," as California law does not "require[] the general manager to be a party to the suit or require that the general manager have 'management responsibilities' related to activities at issue in the suit." *Id.* at 644; *id.* at 645 ("Arigna could have properly served BMW [AG] under California law by serving BMW NA, whether BMW NA was party to the suit or not.").[5] Therefore, Arigna was "not

---

[5] Defendants' accusations that Jinko US was tactically omitted from this lawsuit (Mot. at 2, 11–

required to transmit documents abroad" under Texas law (or under an alter ego theory) because the "plain language of Rule 4(e)(1) permits Arigna to perform service under California law *instead* of serving under Texas law." *Id.* at 645; *see also Atlas Global*, 2022 WL 18584501, at *5 (service of Eastern District of Texas complaint for patent infringement on defendants' general manager in California authorized by California law). The same conclusion applies here.

### B.  LONGi Properly Served Defendants Via Their General Manager Jinko US

"California law defines a general manager as a person or entity who (1) is 'of sufficient character and rank to make it reasonably certain that defendant would be apprised of the service' and (2) has 'given [the defendant] substantially the business advantages that it would have enjoyed if it conducted its business through its own offices or paid agents in the state.'" *Arigna III*, 697 F. Supp. 3d at 644 (quoting *Cosper*, 53 Cal. 2d at 83–84). The "general manager" definition is "very broad," and has been held to include "domestic sales representative(s) and local distributor(s) of a foreign corporation," as well as "domestic distributors, salesmen or advertisers, or customer service liaisons of foreign manufacturers even if the foreign-domestic relationship is 'casual' or 'non-exclusive' as long as the domestic entity provides the foreign entity an open channel for the regular flow of business from the foreign entity into California." *Arigna II*, at 12 (quoting *Brighton Collectibles, Inc. v. Winston Brands, Inc.*, No. 11-cv-02191-GPC, 2013 WL 394060, at *6 (S.D. Cal. Jan. 30, 2013)). "[D]omestic subsidiaries often meet the criteria." *Id.* at 8 n.2. "The inquiry under *Cosper* is not whether the parent company *controls* its subsidiary," and neither *Cosper* prong "demands that the parent control the subsidiary." *Laukat v. ABB, Inc.*, No. 19-cv-09436-CJC(Ex), 2020 WL 3213759, at *4 (C.D. Cal. Feb. 20,

---

12) are baseless and irrelevant. Defendants' "suspicions are merely that—suspicions" and "[s]uspicions alone will not support dismissal." *Arigna III*, 697 F. Supp. 3d at 645–46.

2020) (citation omitted).

For example, *Cosper* is the seminal California Supreme Court case setting forth the two-prong approach to the "general manager" inquiry. There, the court approved service in California of a summons and complaint on Smith & Wesson's "agent, sales manager and manufacturer's representative" (a non-party), who solicited business for Smith & Wesson on a "non-exclusive basis," and on the agent's "own time and expense," in return for a 5% commission on sales of Smith & Wesson's products. *Cosper*, 53 Cal. 2d at 79–81. The court held that "it reasonably appears that [the] manufacturer's representative actively engaged in promoting the sales of Smith & Wesson and earning commissions through such sales, [and so] would have ample regular contact" with Smith & Wesson in order to apprise them of service, thus meeting the first prong of the "general manager" test. *Id.* at 83. As to the second prong, the court held that the agent "in his selling and advertising activities was performing services for Smith & Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state,'" thus giving Smith & Wesson business advantages as if it were conducting business itself in California. *Id.* at 84 (citation omitted). Despite the lack of ownership or control of the agent by Smith & Wesson (including the fact that the agent was operating under an independent contract at its own expense), the court held that the agent was a "general manager" of Smith & Wesson for purposes of service of process. *Id.* at 83–84.

"Domestic subsidiaries often meet the criteria under California law . . . to be a 'general manger' and are therefore deemed agents authorized to receive service of process on behalf of their foreign parent." *Arigna II*, at 8 n.2 (compiling cases). For example, in *Atlas Global*, TP-Link USA was found to be a "general manager" of foreign entity TP-Link Technologies because

the two entities were "related" (i.e., "part of the same corporate network and family") and TP-Link USA was the defendant's "sole distributor of the accused products within the United States." 2022 WL 18584501, at *5 & n.5. Likewise, in *K-fee System GmbH v. Nespresso USA Inc.*, Swiss corporation NNSA was served with a complaint in California by personal service of the registered agent of Nespresso USA. No. 22-cv-525-GW-AGRx, 2022 WL 18278402, at *7 (C.D. Cal. July 13, 2022). Recognizing that the California Supreme Court's decision in *Cosper* set the bar "*exceedingly low* for who/what may be deemed a 'general manager,'" the court rejected NNSA's arguments (similar to those made by Defendants here, Mot. at 4, 13) that Nespresso USA was "a separate corporate entity." *K-fee*, 2022 WL 18278402, at *7, *10. Indeed, the court found that a "general manager" need not be involved in a "parent/subsidiary relationship" with the defendant, or even be an "affiliate" of the defendant under *Cosper*. *Id.* at *10. The court held it was "hard to imagine a circumstance where Nespresso USA does not qualify as NNSA's 'general manager' for service-of-process purposes" given that Nespresso USA was an affiliate and non-exclusive distributor of NNSA in the United States, even if NNSA had not specifically focused any efforts toward the California market specifically. *Id.*; *Laukat*, 2020 WL 3213759, at *3 (Jaguar America, as importer and "distributor of some—if not all—of Jaguar International's vehicles" and an "integral part of its 'global sales and distribution network'" was foreign affiliate's "general manager" for service of process).[6] Finally, in *Yamaha*

-------------

[6] Given the "low-bar set by *Cosper*" the *K-fee* court held that "forcing the parties to take discovery concerning this subject would be a waste of time." 2022 WL 18278402, at *10. LONGi contends discovery is likewise unnecessary to deny Defendants' Motion in light of the uncontested facts discussed herein. However, if the Court is inclined to grant Defendant's Motion, LONGi requests permission to take discovery as to the relationship between Defendants and Jinko US and the declarations Defendants have submitted. *Id.* (noting that the plaintiff would "unquestionably" be offered the opportunity to take jurisdictional discovery if the Court was inclined to grant the motion to dismiss for insufficient service).

*Motor Co. v. Superior Court*, service on foreign corporation Yamaha-Japan was effective when made in California on Yamaha-America, which served as "the American face of the Japanese Company" and performed functions such as "sell[ing] the manufacturer's products, provid[ing] warranty service, English owner manuals, . . . testing, marketing, and receiv[ing] complaints about the manufacturer's products," which led to highly probable contact between the two entities.  174 Cal. App. 4th 264, 274 (2009) (emphasis omitted).

As discussed below, the Complaint and the facts admitted in the Motion and sworn declarations confirm that Jinko US satisfies both prongs of the "general manager" standard.

### 1.     It Is Reasonably Certain Jinko US Would Apprise Defendants of Service

Jinko US is of "sufficient character and rank" to make it reasonably certain Defendants would be "apprised of the service."  *Cosper*, 53 Cal. 2d at 83–84.  LONGi explicitly pled this in its Complaint, alleging that "Jinko US . . . has frequent contacts with Jinko Malaysia and Jinko Vietnam through at least the steady importation of infringing solar modules," and that further, based on their "close corporate relationship and common directors and officers," "it is reasonably certain that JinkoSolar and Jinko China have regular contacts with Jinko US in its capacity as their United States sales and operations base such that it is reasonably certain that JinkoSolar and Jinko China would be apprised of the service of this Complaint when it is served on Jinko US." *Id.* ¶¶ 18, 20.

This is not a close case.  Unlike the loose independent contractor relationship found sufficient to constitute a "general manager" in *Cosper*, here it is a virtual certainty that service of Jinko US would reasonably apprise each Defendant, as all Defendants are not only affiliates of one another, but also acknowledge having regular and close business relationships with Jinko US for purposes of selling, importing, and servicing customers for Defendants' solar module products.  *See, e.g.*, Dkt. 18-3 (X. Li Decl.), ¶¶ 7–11, 13–15; Dkt. 18 (H. Cao Decl.), ¶¶ 5, 8–11,

13–15; Dkt. 18-1 (L. Lim Decl.), ¶¶ 5, 11–14, 18; Dkt. 18-2 (Xinyou Decl.), ¶¶ 5, 11–14, 16, 18, 21; Dkt. 22-1 (H. Li Decl.), ¶¶ 10–12; Mot. at 6–8.  Even if that were not enough (it is), Xiande Li, the founder of JinkoSolar and CEO of Jinko US, is a board member and/or senior executive of ***all entities***.  Dkt. 1, ¶¶ 7, 9, 18; Mot. at 4–5.  Mr. Li can hardly dispute that, as CEO of Jinko US, when Jinko US received service he became aware of that fact on behalf of all Defendant entities on which he holds equally senior board and/or executive positions.

Finally, there can be no doubt that Defendants were promptly apprised of the Complaint following service on Jinko US, as Defendants collectively requested extensions of time to answer the Complaint on February 13, 2025, just three weeks after service on Jinko US.  Dkt. 13.  Thus, Defendants have definitively received actual notice of the Complaint.  *Arigna II*, at 2, 13–14 ("As clearly evidenced by BMW AG's requests for extensions of the time to answer and the filing of the present Motion, service upon BMW AG via its general manager pursuant to California law provided BMW AG with 'notice reasonably calculated under all the circumstances, to apprise interest parties of the pendency of the action and afford them an opportunity to present their objections' . . . .").

Again, the facts here closely track those considered by the Court in *Arigna*.  As here, BMW AG's domestic subsidiary, BMW NA, was a "point of contact within the United States" for purposes of product service and customer relations.  *Arigna II*, at 8–9.  As a result of their business relationship, Arigna had shown there would be "ample regular contact" between BMW AG and BMW NA.  *Id.* at 9.  Whether BMW NA held "management responsibilities" for BMW AG was irrelevant to this analysis.  *Arigna III*, 697 F. Supp. 3d at 644.  So too, whether the entities observed "corporate formalities" or were "alter ego[s]" of one another was not a relevant consideration.  *Arigna II*, at 11; *Arigna III*, 697 F. Supp. 3d at 643–44; *contra* Mot. at 4.

2.    *Jinko US Gives Defendants Substantially the Business Advantage They Would Have Enjoyed if They Conducted Business Through Their Own Offices or Agents in California*

There can also be no doubt that each Defendant, through its business partner relationship with Jinko US, receives substantial business advantages that they would otherwise have enjoyed if they conducted business in their own offices or using their own employees in California, thus satisfying the second prong of the "general manager" test.

This too was explicitly pled in the Complaint with respect to all Defendants (*e.g.*, Dkt. 1, ¶¶ 19–20), and is confirmed by Defendants' sworn declarations.  For example, it is undisputed that Jinko US "serves a client base in the United States" for the solar modules designed and manufactured by JinkoSolar, Jinko Malaysia, Jinko Vietnam, and Jinko China.  *See, e.g.*, Dkt. 18-3 (X. Li Decl.), ¶¶ 13–15, 17, 19, 22; Dkt. 18 (H. Cao Decl.), ¶¶ 5, 13, 15, 17, 19, 22; Dkt. 18-1 (L. Lim Decl.), ¶¶ 5, 11–14, 16, 18, 21; Dkt. 18-2 (Xinyou Decl.), ¶¶ 5, 11–14, 16, 18, 21. Because Jinko US serves this function on their behalf (including maintaining California offices and employees and holding itself out in public-facing materials as Defendants' "full-service team located in the heart of Silicon Valley" for "US Sales and Operations"), Defendants do not have to directly involve themselves in daily operations in California, pay for employees or offices in California, or directly interface with U.S. customers.  *See, e.g.*, Dkt. 1, ¶ 17; Dkt. 18-3 (X. Li Decl.), ¶¶ 13–15, 17, 19, 22; Dkt. 18 (H. Cao Decl.), ¶¶ 5, 13, 15, 17, 19, 22; Dkt. 18-1 (L. Lim Decl.), ¶¶ 5, 11–14, 16, 18, 21; Dkt. 18-2 (Xinyou Decl.), ¶¶ 5, 11–14, 16, 18, 21.  Instead, Jinko US performs all of these functions, and even imports Defendants' products into the United States on its customers' behalf.  *See, e.g.*, Dkt. 22-1 (H. Li Decl.), ¶¶ 10–12; Mot. at 6–8, 15.  And, as in *Yamaha*, it is notable that Defendants have "not made it easy to be served directly by having an 'easily ascertainable' designated agent for service of process in California," as they all admit to having no registered agent, office, or employees in California.  *Yamaha*, 174 Cal. App. 4th at

275; Mot. at 4–5 (Defendants have "never designated an agent for service of process" in the United States); Dkt. 22-1 (H. Li Decl.), ¶ 13; Dkt. 18-3 (X. Li Decl.), ¶ 12; Dkt. 18-2 (Xinyou Decl.), ¶ 10; Dkt. 18-1 (L. Lim Decl.), ¶ 10; Dkt. 18 (Cao Decl.), ¶ 12.

The facts are once again highly similar to those this Court found sufficient to meet the "general manager" standard in *Arigna*. There, as here, BMW NA imported and distributed BMW AG's products in the United States, interfaced directly with U.S. customers for those products, provided service and support for those products, and made U.S.-specific business decisions on topics such as distribution and marketing. *Arigna II*, at 8–10. Corporate formalities as between the entities, including "the degree of separation of BMW AG's ownership over BMW NA" were found to be irrelevant to the general manager inquiry. *Id.* at 11. Therefore, because BMW NA provided a "continuous flow of business into the United States" for the benefit of BMW AG, service on BMW NA satisfied the second prong of the "general manager" standard. *Id.* at 10. Jinko US provides the same type of benefits to each of the Defendants here, and thus the Court should reach the same conclusion.

### C.    The Court Need Not Address Whether Jinko US Is an "Alter Ego" of Defendants

Despite recognizing that Federal Rule of Civil Procedure 4(h) permits service on foreign corporations in the United States in any manner consistent with Rule 4(e)(1), Defendants' Motion studiously addresses only one question: whether service of Defendants was proper under an "alter ego" theory of service. Mot. at 4, 8–10, 18–21. In so doing, Defendants completely *ignore* that Rule 4(e)(1) also authorizes service of Defendants under any process deemed appropriate by California law, the state in which service took place. Defendants fail to cite even a single case addressing standards for service under California law, and instead discuss cases focusing only on service under *Texas* law. *See, e.g.*, *Hargrave v. Fibreboard Corp.*, 710 F.2d

1154, 1163 (5th Cir. 1983) (applying Texas long-arm statute in personal jurisdiction analysis); *Fundamental*, 2018 WL 3330022, at \*3 (applying Texas law when attempted service was effectuated on subsidiary in Texas); *Wilco Marsh Buggies & Draglines, Inc. v. EIK Eng'g Sdn. Bhd.*, No. 19-cv-00565, 2020 WL 6154189, at \*2 (W.D. Tex. Feb. 26, 2020) (same); *Brewer v. Suzuki Motor of Am., Inc.*, No. 15-cv-197, 2015 WL 4433046, at \*2 (S.D. Tex. July 17, 2015) (applying Texas law when attempted service was effectuated by mailing process to the Texas Secretary of State and the subsidiary's registered agent for service of process in Texas).

The Court need not address Defendants' "alter ego" arguments or the associated factual contentions in order to deny the Motion. "Pursuant to federal law, a corporation can be served under the law of the state in which service was executed," and "[w]hile the rules allow for application of Texas law, they do not preclude the application of California law." *Atlas Global*, 2022 WL 18584501, at \*5. As discussed above, service was unquestionably proper under California's "general manager" standard, which is permitted by Rules 4(h) and 4(e)(1). Defendants' focus on the Texas "alter ego" standard is "not persuasive." *Id.* (where a defendant is served in California, a motion to dismiss relying "on Texas law alone is not persuasive").

Additionally, Defendants' arguments are the same as those *rejected* by this Court and others in making the "general manager" assessment. For example, Defendants arguments regarding the Texas long-arm statute are the same as those considered and rejected by the Court in *Arigna. See Arigna II*, at 7; *Arigna III*, 697 F. Supp. 3d at 644–45. Defendants also argue they were not served pursuant to the Hague Convention (Mot. at 11), but service in the United States pursuant to the Federal Rules of Civil Procedure is fully *consistent* with the Hague Convention. *See, e.g.*, *Atlas*, 2022 WL 18584501, at \*5; *Arigna II*, at 5–6. Defendants assert that the "Jinko entities at issue . . . maintain corporate formalities" and that Jinko US "is a

19

distinct corporate entity from any of the four Defendants."  Mot. at 4, 13–14.  But details about the nature of corporate relationships, distinctness, and control are unnecessary to the "general manager" inquiry, as was explicitly recognized, for example, in *K-fee*, which held that a "general manager" need not even be an "affiliate" of or involved in a "parent/subsidiary relationship" with the defendant.  2022 WL 18278402, at *7, *10.

Finally, as discussed above, the facts advanced by Defendants in their Motion *confirm* that each Defendant utilizes Jinko US as a "general manager" under *Cosper*, in that each Defendant plainly has regular communication with and enjoys substantial business advantages in California through Jinko US.  *Supra* § IV.B.1–2.  This is confirmed, for example, by the fact that Defendants assert that all Defendants have "no offices, properties, or employees located in the United States."  Mot. at 4–5.  Instead, Defendants rely upon Jinko US (their affiliate and/or subsidiary) and its offices and employees, which "operate[s] entirely out of the United States, including out of its sales facility in Campbell, California," to "provide[] sales and customer support services related to photovoltaic ('PV') module products and energy storage systems," which it purchases under "legal agreements" from Jinko Malaysia and Jinko Vietnam.  Dkt. 22-1 (H. Li Decl.), ¶¶ 3–5, 8, 10–11; Mot. at 6 (confirming Jinko US "sells and provides customer service support for photovoltaic module products (*i.e.*, solar panels), including products sold under the [JinkoSolar] brand").  Indeed, Jinko US's declarant characterizes Jinko US and each of the Defendants as "business partners" that "necessarily interact within the capacity of that relationship."  Dkt. 22-1 (H. Li Decl.), ¶ 12.  As a result of this business relationship, Defendants are able to avoid substantial burdens, such as paying U.S.-based employees, paying for office space in California, paying for U.S. business operations, directly servicing U.S. clients, providing sales or customers service support in the U.S., filing U.S. financial statements and

returns, and interfacing with U.S. customs on customers' behalf, all of which are instead handled directly by Jinko US on the Defendants' behalf. Mot. at 6–8; Dkt. 18-3 (X. Li Decl.), ¶¶ 15–17, 19, 22. Thus, Defendants' arguments against an "alter ego" relationship only solidify that Jinko US is a "general manager" of each entity under California law.

## V. CONCLUSION

Because Defendants were all properly served in California pursuant to California law when LONGi delivered the summons and Complaint to the authorized agent of their "general manager" Jinko US, Defendants' Motion should be denied.

Dated: April 1, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
Texas State Bar No. 24001351
Tom Gorham
Texas State Bar No. 24012715
GILLAM & SMITH LLP
303 S. Washington Ave.
Marshall, TX 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com
tom@gillamsmithlaw.com

Samuel N. Tiu
Lead Attorney
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Phone: (213) 896-6095
Fax: (213) 896-6600
stiu@sidley.com

Michael J. Bettinger
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 772-1200
Fax: (415) 772-7400
mbettinger@sidley.com

*Counsel for Plaintiff*
*LONGi Green Energy Technology Co. Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has

been served electronically on all counsel of record via the Court's ECF system on April 1, 2025.


Dated: April 1, 2025                    */s/ Melissa R. Smith*